**TRILLIUM INDUSTRIES, INC., Appellant,**

v.

**KENTUCKY UNEMPLOYMENT INSURANCE COMMISSION; Kentucky Division of Unemployment Insurance, Appellees.**

No. 2009–CA–000535–MR.

Court of Appeals of Kentucky.

April 30, 2010.

Ordered Published June 25, 2010.

Norbert J. Arrington, Richard L. Masters (argued), Louisville, KY, for appellant.

James C. Maxson (argued), Frankfort, KY, for appellees.

Before COMBS, Chief Judge; KELLER and WINE, Judges.

## OPINION

KELLER, Judge:

Trillium Industries, Inc., (Trillium) appeals from the Opinion and Order of the Franklin Circuit Court affirming the decision of the Kentucky Unemployment Insurance Commission (the Commission) finding Trillium to be the successor to R.S. Communications, Inc. (R.S.). Having concluded that the Commission's factual findings were supported by substantial evidence and that it correctly applied the law to the facts, we affirm.

## FACTS

R.S. became subject to Kentucky unemployment insurance laws in 1997. Its sole business involved refurbishing used mobile phones. In May 2005, the Kentucky Division of Unemployment Insurance (the Division) issued a delinquent report assignment because R.S. had not filed quarterly reports since the last quarter of 2002. In investigating the matter, Division auditors attempted to make contact with R.S. at its last known address and telephone number, but were unable to do so. Stephanie Potter (Auditor Potter), a Division auditor, then contacted the founders of R.S., Richard and Stephanie Wilson (the Wilsons) at their home address. The Wilsons in-

formed Auditor Potter that R.S. had been sold to Trillium in October 2001. Prior to the sale, the Wilsons owned fifty percent of R.S., while Nick Knoth and Brent Thurman owned the remaining fifty percent. At the request of the Division, the Wilsons completed form UI–21, Report of Change in Ownership, reflecting the transfer of R.S. to Trillium.

After speaking with the Wilsons, Division auditors made several attempts via mail and/or telephone to meet or speak with representatives of Trillium regarding the sale. The only response the auditors received was a telephone call from Doug Gott, Trillium's Chief Financial Officer, who stated that the sale of R.S. to Trillium had been "contingent" and that the sale never occurred. The auditors were unable to locate a representative from Trillium to sign the UI–21 form.

Auditor Potter then requested that the Wilsons provide the Division with proof that the sale occurred. The Wilsons provided Auditor Potter with a Stock Purchase Agreement between the R.S. shareholders and Trillium and several letters of correspondence in reference to the sale. The Division subsequently made an administrative determination that Trillium was the successor to R.S. and that it was liable for approximately $495,000 in unpaid unemployment taxes.

Following the Division's findings, Trillium brought an appeal before the Commission. The Commission conducted a hearing, which was held over the course of four days: May 16, 2007, May 29, 2007, June 28, 2007, and July 16, 2007. On January 22, 2008, the Commission issued an order affirming the Division's determination that Trillium was the successor to R.S. Trillium appealed to the Franklin Circuit Court, which affirmed the Commission. Trillium filed a motion to alter, amend or vacate the circuit court's opinion and order, and on February 25, 2009, the circuit court entered an order denying Trillium's motion.[1] This appeal followed.

### STANDARD OF REVIEW

As stated in *Competitive Auto Ramp Services, Inc. v. Kentucky Unemployment Insurance Commission,* 222 S.W.3d 249, 252 (Ky.App.2007):

> The scope of review of an administrative action requires that the decision be affirmed if there is substantial evidence of probative value to support the agency's factual findings and if it correctly applied the law to the facts. Substantial evidence means evidence of substance and relevance sufficient to induce conviction in the minds of reasonable people.

(Citations omitted). Further, as noted in *Thompson v. Kentucky Unemployment Insurance Commission,* 85 S.W.3d 621, 624 (Ky.App.2002):

> If there is substantial evidence to support the agency's findings, a court must defer to that finding even though there is evidence to the contrary. A court may not substitute its opinion as to the credibility of the witnesses, the weight given the evidence, or the inferences to be drawn from the evidence. A court's function in administrative matters is one of review, not reinterpretation.

(Citations omitted).

### ANALYSIS

 The issue in this case is whether there is substantial evidence to support the

---

1. Although Trillium moved to alter, amend or vacate the circuit court's opinion and order, it requested relief pursuant to Kentucky Rule of Civil Procedure (CR) 59.01, which is a motion for a new trial. It appears from the record that the parties treated Trillium's motion as a motion to alter, amend or vacate pursuant to CR 59.05. The circuit court denied Trillium's motion for CR 59.01 and/or other post-judgment relief. Therefore, any discrepancy regarding the rule number is inconsequential.

Commission's finding that Trillium is the successor employer to R.S. There are two statutes relevant to determining who is responsible for unemployment insurance debts. Kentucky Revised Statute (KRS) 341.070(7) provides that a successor employer is an employer subject to the provisions of the unemployment insurance statute. Specifically, it states that:

> Any employing unit that succeeds to or acquires the organization, trade, or business, or substantially all of the assets of another employing unit which at the time of such succession or acquisition is a subject employer. . . .

*Id.* At the time Trillium's liability was determined, KRS 341.540(1) provided that:

> Any employing unit which succeeds to or acquires the organization, trade, or business of a subject employer shall assume the resources and liabilities of the predecessor's reserve account, including interest, and shall continue the payment of all contributions and interest due under this chapter. . . .

The successorship regulation, 787 KAR 1:300 § 1, which was in effect at the time Trillium's liability was determined, provided the following:

> Successorship . . . shall be deemed to have occurred between two (2) employing units when the following conditions exist:
>
> (1) Negotiation occurs to bring about the transfer, either directly between the parties to the transfer, or indirectly through a third party intermediary.
>
> (2) At least two (2) of the following conditions are met, provided that this condition shall not be satisfied if only paragraphs (c) and (d) of this subsection are met:
>
> (a) The employing unit was a going concern when acquired. For the purpose of this administrative regulation, a going concern shall also include an employing unit which has temporarily ceased subsequent to the date on which negotiations to transfer the employing unit were begun.
>
> (b) The subsequent owner or operator continued or resumed basically the same type of employing unit in the same location.
>
> (c) The subsequent owner employed fifty (50) percent or more of the previous owner's workers in covered employment.
>
> (d) The previous owner employed fifty (50) percent or more of the subsequent owner's workers in covered employment.
>
> (e) The subsequent owner acquired work contracts or commitments from the previous owner.

As noted in *Competitive Auto Ramp Services, Inc.,* "the plain language of KRS 341.540 and 787 KAR 1:300 requires that there be some 'connection, negotiation, or transaction between the parties.'" 222 S.W.3d at 253 (*quoting Wildot, Inc. v. Kentucky Unemployment Ins. Comm'n,* 762 S.W.2d 17, 19 (Ky.1988)).

In this case, it is undisputed that negotiations took place between R.S. and Trillium. However, Trillium contends that there was never a transfer of R.S. to Trillium. Instead, Trillium argues that although the Stock Purchase Agreement was entered into, the agreement was assigned to its affiliate, Aydia Electronics, Inc. (Aydia).

As correctly noted by the circuit court in its Opinion and Order:

> Review of the record reveals a confusing set of circumstances. Many documents were apparently faxed back and forth between the parties, and as a result not all have been signed by all required parties. Also, because the alleged deal was purportedly executed in 2001, records retained by law firms and

accountants are largely unavailable. The state of the record has led to two possible conclusions. On one hand, representatives from Aydia and Trillium produced signed documents and affidavits supporting the conclusion that Trillium assigned its rights under the Stock Purchase Agreement to Aydia, who executed said agreement. These documents include:

- The Stock Purchase Agreement
- Affidavits of John McCloud, former senior-level management employee of Trillium stating Trillium did not purchase stock in [R.S.], but that Aydia did
- Affidavit from Robert Futrell, attorney for Trillium, stating that, to the best of his knowledge, the stock purchase did not take place because Trillium's senior lender did not approve it, that Aydia purchased the shares of [R.S.], and that Trillium did not assume any material debts of [R.S.]
- An October 9, 2001 letter providing notice to the Wilsons and all others with ownership interest in [R.S.] that Trillium assigned its rights and interests to Aydia
- A non-competition agreement signed by an agent of Aydia and Richard Wilson and another signed by Aydia and Stephanie Wilson
- Two releases and waivers of all claims, one signed by an Aydia representative and Richard Wilson, the other signed by an Aydia representative and Stephanie Wilson
- A receipt for $25,000 each to Richard and Stephanie Wilson, indicating that Trillium had assigned its rights to Aydia. This document is signed by both Richard and Stephanie Wilson, but not by Aydia.

- A buyer's closing certificate signed by the President of Aydia
- Various documents reporting the sale occurring between Trillium and [R.S.] at different times: April 2001, August 2001, and October 2001

On the other hand, documents and testimony support the conclusion that Trillium did in fact purchase and operate [R.S.], closing it and absorbing some of its employees some time after the stock transfer. Supporting evidence includes:

- Testimony from Richard & Stephanie Wilson that Trillium and its agents took physical possession of equipment, bookkeeping materials, and even keys to the building and that Trillium assumed all [of] [R.S.]'s debts and contracts
- Testimony from the Wilsons that they believed they were dealing with Trillium and its representatives at all times
- Testimony that [R.S.] continued to operate as a mobile phone refurbisher for approximately one year after the sale was finalized
- Testimony from Stephanie Potter, auditor with the Division, that approximately sixteen [R.S.] employees were apparently absorbed by Trillium and that the Division has no records regarding Aydia
- An employment application of a former [R.S.] employee which indicated [R.S.] had been a Trillium subsidiary
- Form UI–21, completed by the Wilsons and indicating a transfer of the entire business occurred in October 2001 to Trillium
- Correspondence dating from October to November 2002 between Richard Wilson and Trillium representatives about the non-competition

agreement and a statement that Trillium and [R.S.] are still engaged in mobile phone operations in the territory described in the agreement

Having reviewed the documents and testimony set forth above, we conclude that there was substantial evidence to support the Commission's finding that Trillium purchased R.S. Although Trillium presented evidence to the contrary, a court must defer to an agency's findings if there is substantial evidence to support such a finding even when there is conflicting evidence. *Thompson*, 85 S.W.3d at 624. Accordingly, there was sufficient evidence presented to support the Commission's finding that negotiations occurred which brought about a transfer of R.S. to Trillium.

In addition to determining that there were negotiations that brought about a transfer, we must also determine if at least two of the five requirements of 787 KAR 1:300 § 1(2) were met. Having reviewed the record, we believe that there is substantial evidence to support the Commission's finding that at least two of the requirements were met.

First, there was substantial evidence that, pursuant to 787 KAR 1:300 § 1(2)(a), R.S. was a going concern when acquired. Specifically, the Wilsons testified that R.S. was operational up to and after the time of the sale. The Wilsons further testified that R.S. continued to provide mobile phone refurbishing services and maintained approximately 100 employees for at least a year after the transfer. This testimony is supported by documentary evidence and testimony provided by Auditor Potter, which indicates that R.S. continued to operate in the same location with approximately the same number of employees for approximately one year. This constitutes substantial evidence.

Second, there was substantial evidence to support the Commission's finding that Trillium continued to operate R.S. as the same type of business at the same location. Testimony was presented that Trillium representatives acquired all of the physical assets of the business, including the leases of equipment and premises, checkbooks, and keys to the facility. There was also testimony that R.S. continued operating after the transfer for approximately one year. Moreover, in his letter to Mr. Wilson dated October 29, 2002, Robert Beshirs, Director of Trillium, stated that "Trillium Industries, Inc., and R.S. Communications remain viable entities in the cellular/wireless telephone industry." This also constitutes substantial evidence. Accordingly, the Commission's conclusion that Trillium is a successor of R.S. was supported by substantial evidence.

For the foregoing reasons, the Opinion and Order of the Franklin Circuit Court is affirmed.

ALL CONCUR.